UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
ROBERT SARVIS, :
:
Plaintiff, :
: No. 1:12-cv-12233-LTS
v. :
: Hon. Leo T. Sorokin (presiding)
POLYVORE, INC., : Hon. Marianne B. Bowler
:
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT POLYVORE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.   INTRODUCTION

This lawsuit—brought by a vexatious litigator who attempted to purchase his legal claim from another party—should not proceed any further.  First, this Court should summarily deny Plaintiff Robert Sarvis' frivolous Rule 12(c) motion for partial judgment on the pleadings because all of his key allegations are vigorously denied by Polyvore; Sarvis has not even attempted to argue that he is entitled to judgment as a matter of law, and the extraneous "evidence" he proffers is inadmissible under Rule 12(c).  On the other hand, the Court should grant Polyvore's cross-motion for judgment on the pleadings, on all counts, because Sarvis' own complaint—and the "assignment" on which it rests—demonstrate that he is not the "owner" of the copyrights asserted, and therefore lacks standing to bring this copyright infringement action under the Copyright Act. It is time to bring this deficient lawsuit to an end.

## II.   BACKGROUND

Polyvore is a popular online fashion community where users create and share digital collages.  *See* www.polyvore.com.  Sarvis claims to be the assignee of 20 copyrights originated

by artist Sheila Wolk (the "Wolk Images").  Dkt. No. 52 at 2, ¶ 6.  Before commencing this lawsuit in November 2012, Sarvis sent a purported DMCA notice to Polyvore on October 12, 2012, with a "representative" list of URLs, asserting that 26 Wolk Images were being infringed on Polyvore's platform (the "DMCA Notice").  Dkt. No. 52-4.  The next month, Sarvis filed this copyright infringement suit against Polyvore, claiming that Polyvore "failed to expeditiously remove all the infringed Images from its web site" and that, having received a "representative" list of 26 allegedly infringing images on its platform, Polyvore was liable for every copy of a Wolk Image that appeared anywhere on its site, including copies not included in the DMCA Notice.  Dkt. No. 1 ¶¶ 19, 42-43.  Sarvis filed an amended complaint ("First Amended Complaint") on January 30, 2013, alleging claims of direct, contributory and vicarious copyright infringement.  Dkt. No. 14.  That complaint—a copycat of Sheila Wolk's own failed suit against another online platform, based on the same photographic images in *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724 (S.D.N.Y. 2012)—was dismissed by the Court on September 19, 2013 (adopting Magistrate Judge Bowler's Report and Recommendation ("First R&R") (i) dismissing Sarvis' vicarious infringement claim with prejudice and (ii) recommending dismissal of Sarvis' direct and contributory infringement claims, but allowing Sarvis the opportunity to further amend his pleading for the limited purpose of alleging these claims).  Dkt. Nos. 34, 41.

Sarvis filed a second amended complaint ("Second Amended Complaint") on July 8, 2014, alleging that Polyvore was (i) *directly* liable for displaying reduced-size copies of the Wolk Images both as search results and in lists of entrants to, and winners of, Polyvore-sponsored art contests and (ii) *contributorily* liable for user infringement because Polyvore

purportedly encouraged users to employ its editing tools to create collages containing alleged copyrighted images.  Dkt. No. 52 at 27-33.

Polyvore filed a second motion to dismiss on August 7, 2014, arguing that (i) Sarvis' allegations of direct infringement did not meaningfully distinguish Polyvore from any other website that either displays reduced-size images (frequently referred to as "thumbnails") for reference or commentary purposes, or provides image editing and hosting functions—like Photobucket, the target of Wolk's failed suit in *Wolk v. Kodak Imaging Network, Inc*., and (ii) Sarvis' contributory infringement claim was squarely rejected by the Supreme Court's decisions in *Grokster* and *Sony*, which held that "mere knowledge of infringing potential or of actual infringing uses" is "not . . . enough."  *Grokster*, 545 U.S. 913, 937 (2005). *See* Dkt. No. 56 and 57 at 7-17.

On October 28, 2014, Judge Bowler heard argument on Polyvore's second motion to dismiss, *see* Dkt. Nos. 66, 68, and issued a second Report and Recommendation ("Second R&R") on March 2, 2015, (i) confirming dismissal of Sarvis' vicarious infringement claim with prejudice, (ii) dismissing Sarvis' newly added claim for violation of 17 U.S.C. § 1201 and (iii) allowing Sarvis' re-pleaded claims of direct and contributory infringement to proceed.  *See* Dkt. No. 75 (adopted by this Court on March 25, 2015, Dkt. No. 80).

Polyvore answered Sarvis' Second Amended Complaint on April 17, 2015, denying each of Sarvis' allegations of copyright infringement.  *See* Dkt. No. 83.  Without adhering to Local Rule 7.1's "meet and confer" requirement prior to filing the instant motion, Sarvis filed this Rule 12(c) motion and supporting memorandum of law on April 23, 2015.  *See* Dkt. Nos. 84 and 85.

Sarvis is a vexatious litigator.  He knows that this Court requires parties to "certify" that they met and conferred before filing a motion, yet he certified that he did so—but he did not.

Sarvis knows that it is improper to misstate an opponent's position to the Court, yet represents (to give just one example) that Polyvore "admits and declares" the validity of certain "screenshots" that he submits, *see* Memorandum of Law in Support of Plaintiff's Motion for Partial Judgment on the Pleadings (Dkt. No. 85 at 7, ¶ 9), when in fact Polyvore observed that those screenshots were mischievously edited by Sarvis to conceal a fact harmful to his case. Finally, Sarvis knows that in ruling on a Rule 12(b)(6) motion, the Court must take his allegations as true, yet Sarvis declares that the Court made findings that it never in fact made. *See, e.g.*, Dkt. No. 85 at 4 ("This Court has already found the assignment of those copyrights to the Plaintiff is valid as a matter of law"); *id*. at 18 ("This [fair use] argument is invalid as this Court found").

Over three decades, Sarvis has amassed a record of unsuccessful litigation.[1] The most notable aspect of this record is Sarvis' misleading conduct. In 1998, Sarvis applied to a Vermont college to teach "business ethics," a subject he claimed he was "well equipped to teach." *Sarvis v. Vermont State Colleges*, 172 Vt. 76, 77-79 (2001). Using a doctored resume, he got the job— until his probation officer alerted the college to certain missing elements on his resume.[2] Sarvis'

---

[1]     *See, e.g., Sarvis v. Town of Nantucket*, 925 N.E.2d 575 (Mass. App. Ct. 2010) (affirming dismissal of Sarvis' complaint against his town for failure to state a claim); *Sarvis v. Hathaway*, Dec. No. Mem. 05-9 (Me. 2005), cert. den., 549 U.S. 812 (2006) (affirming dismissal of Sarvis' breach of contract and conversion claims against his ex-wife for failure to state a claim); *Sarvis v. United States*, 234 F.3d 1262 (2d Cir. 2000) (affirming the district court's grant of summary judgment denying Sarvis' claims against the Bureau of Prisons for battery, assault and violation of First Amendment rights); *Sarvis v. ANB Int'l, Inc.*, No. 930682, 1999 WL 1318986 (Mass. Super. Mar. 16, 1999) (denying Sarvis' motion for reconsideration of a denial of his motion for summary judgment for claims against a company, based on the fact that Sarvis filed a premature notice of appeal prior to the entry of judgment); *Sarvis v. United States*, 166 F.3d 1206 (3d Cir. 1998) (dismissing Sarvis' appeal for claims against the Bureau of Prisons).

[2]     *Vermont State Colleges*, 172 Vt. at 77 ("The material facts in this case are not in dispute. On March 13, 1995, plaintiff was convicted of five counts of bank fraud and sentenced to serve forty-six months in prison. He was ordered to pay over $12 million in restitution to five banks in order of priority, including two million dollars to the Proctor Bank, a Vermont bank, which was given top payment priority. He was incarcerated from April 4, 1995 to August 17, 1998, at the Allenwood prison in Lewisburg, Pennsylvania, where he worked in the prison's electric department. In August of 1998, two weeks after he was released from prison, plaintiff applied for an adjunct professor position at Community College of Vermont (CCV), a division of defendant.").

failed wrongful-termination suit against the school led to a court decision on resume fraud that has been included in multiple legal textbooks.[3]  In 2007, the United States Government filed an action against Sarvis, "seeking to set aside the fraudulent transfer of certain properties by Robert H. Sarvis . . . for the purpose of avoiding payment of a restitution obligation of over $12 million."). *United States v. Sarvis*, No. 06-cv-33, 2007 WL 1841081, at *1 (D. Vt. June 27, 2007).

In 2011, Sarvis emerged as an "expert witness" for Sheila Wolk in Ms. Wolk's copyright infringement suit, *Wolk v. Kodak Imaging Network, Inc.*, involving the very copyrights at issue here.[4]  When Ms. Wolk's suit was dismissed, Sarvis purportedly obtained an "assignment" of her copyrights, and instituted this copyright infringement action against Polyvore.

## III.    SARVIS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED.

### A.    Applicable Standard

The standard of review for a Rule 12(c) motion is the same as that for a motion to dismiss under Rule 12(b)(6): the court must accept as true the non-movant's well-pleaded factual averments and draw all reasonable inferences in that party's favor.  *Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014); *Soto-Torres v. Fraticelli*, 654 F.3d 153, 157 (1st Cir. 2011) (applying *Twombly* to the Rule 12(c) standard).  As the non-movant, Polyvore benefits from "all possible favorable assumptions."  Wright & Miller; 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.).  Furthermore, "there is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts

---

[3]    *See, e.g.*, Roger Miller et al., *Essentials of the Legal Environment* (4th ed. 2014); William A. Kaplan et al., *The Law of Higher Education* (5th ed. 2013); Kenneth Clarkson et al., *Business Law Text and Cases* (12th ed. 2012); Roger Miller et al., *Business Law Today* (8th ed. 2008).
[4]    *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 728 (S.D.N.Y. 2012).   *See* Curriculum Vitae of Robert H. Sarvis, 2011 WL 2908962, filed in *Wolk v. Kodak* (S.D.N.Y. March 22, 2011).

5

conclusively establish the movant's point."  *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).  Thus, Plaintiff's motion can be granted only if the undisputed facts alleged in the pleadings or judicially noticed establish that Polyvore cannot prevail as a matter of law. *See Geupel v. Benson*, 704 F. Supp. 312, 313 (D. Mass. 1989).  Plaintiff comes nowhere close to satisfying this standard.

    **B.**    **Polyvore Has Stated a Plausible Defense Against Sarvis' Direct Infringement Claim and the Court Cannot Consider His Extraneous Exhibits.**

Sarvis' Rule 12(c) motion asks the Court to grant partial judgment on the pleadings on the direct infringement claim (Count I of the Second Amended Complaint).  Sarvis' approach is as follows: (1) he ignores Polyvore's Answer and its categorical denial of the factual allegations that Sarvis claims support a finding of liability against Polyvore; (2) he misstates this Court's rulings to suggest that the Court made factual findings in denying Polyvore's Rule 12(b)(6) motion, when in fact the Court only ruled that Sarvis had stated a claim under the applicable pleading standards; and (3) he improperly attempts to introduce extraneous factual materials, including some manufactured for this motion, in the form of exhibits he attaches to his motion— materials which are outside the pleadings and not subject to judicial notice.  For each of the reasons discussed below, Sarvis' motion for partial judgment on the pleadings must be denied.

    **1.**    **Polyvore's Answer Denied All Liability for Copyright Infringement.**

Polyvore's Answer expressly and categorically denied Sarvis' allegations on all infringement claims.  Dkt. No. 83, ¶¶ 86-101; 102-119.  The Answer made no admissions.  Since the Second Amended Complaint and Answer were filed, there has been no discovery or exchange of factual information.  In short, there is no reason why Sarvis should now move for judgment on the pleadings.  A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."  *Santiago v. Bloise*, 741 F. Supp. 2d 357, 360 (D. Mass. 2010)

(citing *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).  Sarvis cites nothing in Polyvore's Answer to justify this motion and does not even claim the Answer serves as the basis for his motion; instead, he baldly disputes the truth of Polyvore's Answer.  Specifically, Sarvis states, "Even though Polyvore in its answer denies (PA ¶ 60), in truth, each and every copy on its web site . . ." and so on.  *See* Dkt. No. 85 at 4, 12 ("*But in truth* Polyvore . . .") (emphasis added). As part of his eight lengthy exhibits (Dkt. Nos. 84-01 to 84-08), he also improperly reaches beyond the pleadings to collect, from Polyvore's website, supposed "admissions." *See* Dkt. No. 84-3. These are nothing of the sort.  For instance, he claims Polyvore made a "website admission" that images "cannot be deleted off Polyvore," Dkt. 85 at 10, when in fact the webpage plainly states (were the Court to consider it) that *users* cannot delete images; *Polyvore* of course can remove images uploaded by its users.

Sarvis also contends that Polyvore cannot claim the DMCA's safe-harbor defense because of its alleged failure to "expeditiously" remove or disable certain of the Wolk Images, one of which was noticed in the DMCA Notice and others which were not part of the DMCA Notice at all.  Polyvore has disputed and continues to dispute that it did not expeditiously remove the noticed images, and continues to take the position that it was not under an affirmative duty to remove the images whose URLs were not included in the DMCA Notice.  *See* Dkt. 57 at 14-16 and 14, n.21 (Polyvore's Memorandum of Law in Support of the Its Motion to Dismiss the Second Amended Complaint); *see also* 17 U.S.C. § 512(m)(1); *Wolk*, 840 F. Supp. 2d at 747 ("In *Viacom*, the Court rejected the plaintiffs' complaint that the service provider, YouTube, remove[d] only the specific clips identified in DMCA notices, and not other clips which infringe the same works.  The same reasoning applies here: Photobucket cannot be held liable for its failure to remove images for which the Plaintiff failed to provide proper notice.").

Sarvis' motion must be based on the pleadings and can be granted only if Polyvore's Answer establishes that Polyvore cannot prevail against Sarvis' direct infringement claim. *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002); *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398, 402 (D. Mass. 2011). Polyvore's Answer, of course, if credited, negates the direct infringement claim. Thus, Sarvis' Rule 12(c) motion must be denied.

### 2.   Sarvis' Motion Improperly Characterizes the Court's Findings on Polyvore's Motion to Dismiss.

Sarvis improperly states that this Court made factual findings in the course of deciding Polyvore's motion to dismiss. *See* Dkt. No. 85 at 1, 4. This is not so. *See, e.g.*, *Epoxy Tech., Inc. v. Daizo Corp.*, No. 12-cv-11409-RWZ, 2013 WL 2146844, at *2 (D. Mass. May 16, 2013) ("a Court does not make such findings when ruling on a motion to dismiss"); *Malanka v. Data Gen. Corp.*, No. 85-cv-2154-MC, 1989 WL 18892, at *1 (D. Mass. Feb. 23, 1989) ("we cannot make [factual findings] at the stage of a motion to dismiss").

- For instance, Sarvis claims to be the assignee of certain copyrights and states that "[t]his Court has already found the assignment of those copyrights to the Plaintiff is valid as a matter of law." Dkt. No. 85 at 4. This is incorrect: in the Second R&R, the Court merely observed that the question of Sarvis' ownership was not at issue in this Court's ruling on Polyvore's second Rule 12(b)(6) motion. *See* Dkt. No. 75 at 13.

- Sarvis states, "While Polyvore has previously argued a "fair use" defense this Court has rejected that defense." Dkt. 85 at 1. This is incorrect: in the Second R&R, the Court only ruled that the "Rule 12(b)(6) record plausibly *allows* a finding of an infringement as opposed to a fair use." Dkt. 75 at 21 (emphasis added).

- Sarvis states, "This Court has already determined that the DMCA Notice met the requirements of §512(c)(3)(A)." Dkt. 85 at 4. This is incorrect: in the Second R&R, the Court was only ruling as to whether Sarvis had made plausible allegations, and in any event, only said that the notice appeared to comply with the DMCA requirements "at least as to the copyrighted works *identified by the URL addressed* in the notice." Dkt. 75 at 27 (emphasis added).

- Sarvis states, "This Court has also already determined that Polyvore failed to expeditiously remove or disable the Image Chameleon #11 after DMCA notification." Dkt. 85 at 5. This is incorrect: in the Second R&R, the Court only observed that Sarvis plausibly alleged that

Polyvore failed to expeditiously remove one of the images purportedly included in Sarvis' DMCA Notice, *see* Dkt. No. 75 at 28; furthermore, nowhere did the Court specifically identify "Image Chameleon #11" as the image that Polyvore allegedly failed to expeditiously remove.

### 3.  The Court Cannot Consider Sarvis' Extrinsic Materials Under Rule 12(c).

In support of his motion, Sarvis attaches eight exhibits totaling 50 pages that he contends justify judgment in his favor.  *See* Dkt. Nos. 84-01, 84-02, 84-03, 84-04, 84-05, 84-06, 84-07, 84-08.  These exhibits should be disregarded by the Court under Rule 12(d).  Through these defective exhibits, Sarvis claims to show the Court images that represent "screenshots" of Polyvore's website at various times or at different URLs.  He attempts to use them to establish (i) that Polyvore is infringing his copyrights (Dkt. Nos. 84-02, 84-04, 84-05, 84-06, 84-07); (ii) the means by which Polyvore's software functions (Dkt. Nos. 84-01 and 84-08); or (iii) that Polyvore's website has made "admissions" to factual matters in this case (Dkt. No. 84-03).

What these exhibits have in common is that they consist of unauthenticated printouts that are outside the pleadings and whose accuracy Polyvore disputes.  Under Rule 12(d), the exhibits cannot be considered *without* converting Sarvis' Rule 12(c) motion into a Rule 56 motion.[5]

A court in a Rule 12(c) motion can only rely on materials outside the complaint if they are incorporated by reference, a matter of public record, or judicially noticed.  *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).  Sarvis' materials do not fall into any of these categories.

---

[5]  Although this case is not ripe for summary judgment, if the Court is inclined to convert the Rule 12(c) motion into a Rule 56 motion, Polyvore requests that the Court set a briefing schedule for summary judgment cross-motions.  This is within the Court's discretion.  A plaintiff who incorporates materials outside the pleadings "invite[s] conversion—and a party who invites conversion scarcely can be heard to complain when the trial court accepts the invitation."  *Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir. 1998); *Vargas-Ruiz v. Golden Arch Dev., Inc*., 368 F.3d 1, 3 n.2 (1st Cir. 2004) (same).

### a)  Not Incorporated by Reference

These proffered exhibits were not incorporated by reference because they were not part of the Second Amended Complaint.  And even if they were, the Court cannot consider them because they are disputed.  A court can only consider documents "attached to or incorporated in the complaint and other *undisputed* documents."  *Hannigan v. Bank of Am., N.A.*, 48 F. Supp. 3d, 135, 140 (D. Mass. 2014) (emphasis added).

- The first three exhibits proffered by Sarvis were apparently created for this motion (Dkt. Nos. 84-01, 84-02, and 84-03), and certainly were not part of Sarvis' complaint filed many months earlier in July 2014.  To make matters worse, it appears Sarvis has superimposed notations (some handwritten) over the unauthorized images or included within the exhibit his own self-serving legal musings.  For example, one such "exhibit" contains the following statement: "[t]he Plaintiff respectfully requests this Court take judicial notices [sic] of the following admissions by Defendant Polyvore at its website").  Dkt. No. 84-03.

- Another exhibit is entitled "Examples of Polyvore Users Copyright Infringement of the Imagees [sic]").  (Dkt No. 84-04; *see also* Dkt. Nos. 84-05, 84-06, 84-07, 84-08.)  Other exhibits contain improper markings by Sarvis, like colored arrows or underlining.  *See* Dkt. Nos. 84-01, 84-03, 84-06, 84-07, 84-08.

- Another exhibit, Dkt. No. 84-01 includes a cropped image from a website, is incomplete as a screenshot, and features date stamps at the bottom that appear to be March 28 and 29, 2015, meaning the exhibit appears to embody materials outside of the Second Amended Complaint.

- Likewise, Dkt. No. 84-02 purports to capture images on Polyvore's site "as of April 15, 2015" and also constitutes extraneous material postdating the Second Amended Complaint.

- Two of the five images that Sarvis claims improperly "remain" on the Polyvore site —"Siren Song" and "Garland"—were not included in Sarvis' DMCA Notice and, in the case of "Siren Song," was not mentioned anywhere in Sarvis' Seconded Amended Complaint.  *Compare* Ex. GG, Dkt. No. 84-2, at 1, *with* Ex. A, Dkt. No. 52-4 at 4-5.

- Finally, Dkt. No. 84-04 has improperly cropped images from a larger screenshot to allow Sarvis to claim that the images are "regarding Polyvore contests"—when in fact the complete, unedited screenshot (attached in an earlier Polyvore declaration) shows that those images actually appear on Polyvore user pages and were not part of any Polyvore contest.  *Id.* at 2 and 3 (compare to Dkt. No. 43, Exs. A and B).

### b)  No Judicial Notice

None of Sarvis' exhibits may be judicially noticed.  Under Fed. R. Evid. 201(b), a judge may take notice of an adjudicative fact only if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Lussier v. Runyon*, 50 F.3d 1103, 1113-14 (1st Cir. 1995).  This standard is applied "stringently . . . for accepting disputed evidence not tested in the crucible of trial is a sharp departure from standard practice." *Id.*  The test for judicial notice has not been met here.  A court may not judicially notice materials "if the evidence in question is at all vulnerable to reasonable dispute." *Id.* at 1114.  Polyvore disputes the exhibits submitted by Sarvis.  This Court cannot accurately and readily determine the accuracy of the materials in the exhibits.

The authenticity or accuracy of Sarvis' exhibits, including webpage screenshots and other images, cannot be verified.  He offers no declaration attesting that he offers a true and correct copy.  The district court cannot take judicial notice of a defendant's website where the court has not been provided with the website or the date on which plaintiff discovered it. *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 159 (D. Mass. 2001).  Judicial notice is doubly problematic given Sarvis' willingness to manipulate images and mischaracterize Polyvore's position on them.  He claims, referring to a declaration filed by Polyvore earlier in this litigation, that Polyvore "admits and declares" the validity of certain "screenshots" that he submits.  Dkt. No. 85 at 7, ¶ 9.  In fact, counsel for Polyvore provided that declaration to show that Sarvis' screenshots were improperly edited by Sarvis to conceal a fact harmful to his case; he cropped a screenshot to make it seem as if images were part of a Polyvore-sponsored "contest" when they were merely an image posted by a Polyvore user and not part of any materials originating from

Polyvore.  *See* Dkt. No. 43 (Decl. of Christopher Muller).  As noted, a number of these unauthenticated screenshots are altered, hand-marked, or contain legal argument.  *See, e.g.*, Dkt. No. 84-3 at 2-4.  At the bottom of some screenshots, a program called "Jasc Paint Shop Pro" is running on Sarvis' computer—software used to manipulate images.  *See, e.g.*, Dkt. No. 84-4 at 5, 6; Dkt. No. 84-5 at 2, 3; *see e.g.,* "PaintShop Pro," Wikipedia entry, *available at* http://en.wikipedia.org/wiki/PaintShop_Pro ("PaintShop Pro (PSP) is a raster and vector graphics editor for Microsoft Windows") (last accessed May 9, 2015).

Furthermore, courts refuse to consider screenshots for the reason that webpages *change*. *See, e.g.*, *Mullinax v. United Mktg. Grp., LLC*, No. 10-cv-03585-JEC, 2011 WL 4085933, at *6 (N.D. Ga. Sept. 13, 2011); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 780 (N.D. Ill. 2011); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167 (S.D. Cal. 2010). Polyvore's website, driven by user-generated content, is in constant flux, yet Sarvis' allegations depend on when and where particular images appeared.  Similarly, incorporation by reference applies to webpages only if the parties "do not dispute the authenticity" of pages.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Polyvore disputes the authenticity of the contents in Sarvis' exhibits.

### c)  Not Public Records

Polyvore's website is not a public record.  *In re Poirier*, 346 B.R. 585, 588 (Bankr. D. Mass. 2006) (courts define public record to include items like published reports of administrative bodies and federal agencies' websites); *Hill v. Capital One Bank (USA), N.A.*, No. 14-cv-6236, 2015 WL 468878, at *5-6 (N.D. Ill. Feb. 3, 2015) ("courts in this District have taken judicial notice of website printouts that originate from government or agency websites," though they

generally require "an affidavit or declaration providing the requisite indicia of reliability" to allow the court to "accurately and readily determine the accuracy of the exhibits").

Accordingly, Sarvis' exhibits are wholly inappropriate for this Court's consideration as attachments to his Rule 12(c) motion.  Polyvore asks this Court to affirmatively exclude the eight exhibits Sarvis attached to his motion and disregard them in considering his motion.

### C.   Sarvis' Exhibits, Even If Reviewed on the Merits, Do Not Justify Judgment on the Pleadings.

Even if Sarvis' exhibits were properly considered on this motion, the substantive content of the exhibits, reviewed on the merits, does not justify judgment on the pleadings for Sarvis. Infringement requires improper acts by the alleged infringer, and all images reflected on Polyvore's website appear through user uploading.  Any copy, display or distribution of users' images is a process automated by software, and federal courts routinely hold that automated copy-and-display functions by Internet service providers like Polyvore cannot support direct liability.  *See, e.g.*, *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1020 (9th Cir. 2013) ("Veoh has simply established a system whereby software automatically processes user-submitted content and recasts it in a format that is readily accessible to its users . . . . initiated entirely at the volition of Veoh's users") (quotations omitted); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("In determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct"); *Wolk*, 840 F. Supp. 2d at 742 (direct liability requires "volitional conduct" that entails more "than mere ownership of a machine used by others to make illegal copies.") (citations omitted).   Furthermore, the First Circuit has previously affirmed liability for copyright

infringement where, among other things, defendant "conceded his *active involvement* in the posting of materials to the server for public access." *Society of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 56 (1st Cir. 2012). Plaintiff contends that Polyvore is obligated to "expeditiously" comb through tens of millions of images for potential infringements, Dkt. 52, ¶¶ 16, 21—even though the DMCA explicitly bars any such obligation.

Finally, even if the Court were to find direct infringement, Polyvore's defense of fair use prevails as a matter of law because Polyvore's software facilitates creative collaging and collage-related uses for the purpose of commentary, reporting or facilitating access to information. *See* 17 U.S.C. § 107; *Blanch v. Koons*, 467 F.3d 244, 247 (2d Cir. 2006) (finding that—like here—a creation based on "fragmentary images" taken from other sources and "collaged" was fair use). Plaintiff's theory has been repeatedly rejected by courts on the ground that "highly transformative" uses like those allowed by Polyvore's technology are protected by the doctrine of fair use. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165-66 (9th Cir. 2007). A website's display of "thumbnail" or "reduced-size" images for a purpose "different . . . than the original work"—such as offering "comment[ary]" (17 U.S.C. § 107) or "directing a user to a source of information"—is not infringement even if the images are "exact cop[ies]" offered as part of a "commercial" enterprise. *Perfect 10*, 508 F.3d at 1165-66 (citations omitted).

## IV.   POLYVORE'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED UNDER RULE 12(c).

### A.   Sarvis Has Not Alleged and Cannot Show That He Owns the Copyrights to the Wolk Images.

Sarvis does not claim to be the original owner of the copyrights in the Wolk Images. Rather, he claims to have obtained certain "rights" by virtue of a written agreement he entered into with Ms. Wolk. As we explain below, Sarvis lacks standing to sue on these copyrights.

To have standing to bring his claims, Sarvis must prove "ownership of a valid copyright." Dkt. No. 75 at 13 (Second Report and Recommendation) (citing, *inter alia, Society of the Holy Transfiguration Monastery, Inc.*, 689 F.3d at 39; Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 12–02, at 12–56 (2005). Courts routinely dismiss copyright suits where, as here, the plaintiff lacks standing to sue. *See, e.g.*, *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483 (1st Cir. 1985); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 883 (9th Cir. 2005); *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No. 08-cv-527, 2006 WL 208830, at *4 (D. Neb. Jan. 26, 2006). Polyvore is entitled to judgment on the pleadings, under Rule 12(c) and 12(b)(1), on grounds that this Court lacks subject-matter jurisdiction because Sarvis lacks standing under the Copyright Act.

Sarvis' Second Amended Complaint makes clear that he is not the owner of the Wolk Images, but rather alleges as follows: "Robert Sarvis is the assignee of certain copyrights," Dkt. No. 52 at 2, ¶ 6, and that this "assignment was made as secure collateral for a line of credit granted by Sarvis to Wolk." *Id.* at ¶ 11. By this assignment, he continues, he obtained the "right to initiate copyright infringement actions to protect his collateral." *Id.* at ¶ 12. Thus, Sarvis' pleading, which is binding, discloses that he extended a line of credit to a copyright owner to acquire not copyrights, but a bare right to sue. He takes care to avoid saying that *he* owns the copyrights, referring to himself as the "assignee," Dkt. No. 52 at 2, ¶ 6, or elsewhere to Ms. Wolk as the "copyright owner" who added the copyright watermarks to the Wolk Images, *id.* at ¶ 64. Stray references to "Plaintiff's copyrights," *see, e.g.*, *id.* at ¶¶ 99, 103, appear only in boilerplate recitations of the elements. These are merely legal conclusions that cannot contradict the facts he alleges in his Second Amended Complaint or the assignment on which he relies.

15

Much of the "Copyright Assignment" appears copied from a template,[6] but it has an important provision styled a "Reversion of Rights." This provision states that the assignment "will revert to Sheila Wolk" as soon as Ms. Wolk pays off an undefined "Line of Credit," and the "Line of Credit is terminated by Robert Sarvis or Sheila Wolk," and Ms. Wolk makes a "one time payment . . . of $1,000.00" to Sarvis. Dkt. No. 52-2 at 3.

Thus, based on the allegations in the Second Amended Complaint, Sarvis is not an assignee, but a creditor. He has not a copyright but a right to repayment, for which the copyrights are merely collateral, i.e., "[p]roperty that is pledged as security against a debt." Black's Law Dictionary 278 (8th ed. 2004). Collateral does not change hands when pledged. If a bank extends a mortgage loan to a buyer who uses her house as collateral, the buyer still owns the house. The bank, in turn, acquires a security interest. This is precisely what Sarvis has. Sarvis cites no cases recognizing the right of a creditor to assert a copyright infringement claim on behalf of a debtor who owns the copyrights that serve as collateral. No such case exists. This is because the law is clear that a plaintiff only has standing to sue when full ownership of the copyrights at issue has been transferred. *Silvers*, 402 F.3d at 883-90 (dismissing suit for failure to allege a valid assignment); *Nafal v. Carter*, 388 F. App'x 721, 723 (9th Cir. 2010) (the "assignment documents at issue here did not actually grant Plaintiff an ownership interest in an exclusive copyright license"); *Nafal v. Carter*, 540 F. Supp. 2d 1128, 1144 (C.D. Cal. 2007) *aff'd*, 388 F. App'x 721 (9th Cir. 2010) ("The Court is not required to accept the formalistic labels attached by Plaintiff [and others] to their agreement, which would permit them to massage the underlying effect of their contractual relationship").

---

[6]     *Compare* "Copyright Assignment," Dkt. No. 52-2, at 3, with Warren's Form of Agreement: Fern's Desk Edition, Form 5.2.03, "Assignment of Copyright—General Form" (with language about rights "throughout the universe" and "to institute any actions").

The DMCA Notice that Sarvis sent to Polyvore also confirms that Sarvis himself recognizes that he does not own the copyrights to the Wolk Images.[7]

Sarvis' gambit here is clear.  He owns nothing, yet pretends that he is a copyright owner in bringing this suit.  Courts reject recent attempts, like that of Sarvis, to purchase copyright suits from actual copyright owners by contracting for illusory ownership rights.  As explained in *Righthaven*, "merely calling someone a copyright owner does not make it so."  *Righthaven*, 716 F.3d at 1168.  Sarvis' assignment is a version of the rejected "Righthaven" agreements, which purported to convey a right to sue, but failed to confer ownership, and therefore the assignees lacked statutory standing under the Copyright Act.  *See, e.g.*, *Hoehn*, 716 F.3d at 1170 (affirming the district court's dismissal for lack of subject matter jurisdiction on grounds that a copyright assignee lacked standing); *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1273 (D. Colo. 2011) (converting defendant's motion to dismiss into a motion for summary judgment, granting summary judgment, and "in light of the need to discourage the abuse of the statutory remedies for copyright infringement," ordering Righthaven to reimburse the defendant's full costs in defending the copyright infringement action, including reasonable attorney fees); *Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 973 (D. Nev. 2011) (dismissing plaintiff's complaint for lack of standing).

Righthaven contracted with copyright owners for the right to enforce those owners' copyrights; recoveries were to be shared.  *Id.* at 976.  Under these agreements, a copyright owner

---

[7]        In the DMCA Notice, Sarvis accused Polyvore of displaying the "art of Sheila Wolk . . . in violation of her copyrights."  Dkt. No. 52-4 at 1.  He adds that he acts "on behalf of the copyright owner, Sheila Wolk."  *Id.*  He states that Polyvore engaged in acts "not authorized by the copyright owner, Sheila Wolk."  *Id.*  Notably, this DMCA notice is dated after the purported assignment was made.  *See* Dkt. No. 52-4 (DMCA Notice dated October 22, 2012); Dkt No. 52-2 (alleged assignment of copyrights, dated September 10, 2012).  Under the DMCA, Sarvis was entitled to file a DMCA Notice on Ms. Wolk's behalf—but only the "legal or beneficial owner" of a copyright can institute an infringement action.  17 U.S.C. § 501(b); *Latin Am. Music Co. v. The Archdiocese of San Juan of Roman Catholic & Apostolic Church*, 499 F.3d 32, 41 (1st Cir. 2007).

"granted to Righthaven all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present, and future infringements of the copyright." *Hoehn*, 716 F.3d at 1168-69.  But the Ninth Circuit saw through the scheme.  After questions about Righthaven's standing were raised in one proceeding, Righthaven and a copyright owner amended their agreement to "clarify" that the agreement was intended to "convey all ownership rights in and to any identified Work to Righthaven." *Id.* at 1171.  The "Copyright Assignment" between Sarvis and Ms. Wolk, too, purports to convey "all of Sheila Wolk's right, title, and interest" in the copyrights.  Dkt. No. 52-2 at 3.

But *even language like this* was insufficient, the Ninth Circuit held, because of the copyright owner's "reversion" right—a right that is materially indistinguishable from the one in Sarvis' assignment agreement.  Under the Righthaven reversion provision, the owner "retained the unilateral right to repurchase all rights and title back from Righthaven." *Id.* at 1172.  This provision stripped Righthaven of standing under the Copyright Act, because exercising exclusive rights only if the owner "decided to allow it" was "not sufficient for standing," even if this was not the intent of the parties. *Id.* at 1171-72.

The "Reversion of Rights" in Sarvis' agreement is equally fatal to his standing to bring this action.  Ms. Wolk has a unilateral right to trigger the reversion of her copyrights (assuming, *arguendo*, she ever conveyed them). *See also Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d at 972 (provision giving media company a "right to reversion . . . destroy[s] Righthaven's supposed rights in the Work"); *Righthaven LLC v. Pahrump Life*, No. 10-cv-01575-JCM, 2011 WL 7442981, at *3 (D. Nev. Aug. 12, 2011) (collecting cases that found that such provisions do not "transfer true ownership of the copyrighted work" when it

18

"qualifies the Assignment with restrictions or rights of reversion," since this leaves the assignee without "ownership of any exclusive rights").

Sarvis personally put at issue his ownership of the copyrights in his motion.  He wrote that, "[t]his Court has already found the assignment of those copyrights to the Plaintiff is valid as a matter of law."  Dkt. No. 85 at 4.  An evaluation of his claim under Rule 12(c) and Rule 12(b)(1) proves that he lacks standing.  His claim of direct infringement fails, but so do, necessarily, his claims for secondary liability in Counts II and III.  Without the exclusive rights of copyright ownership, Sarvis cannot proceed under any theory of copyright infringement.  *See Hoehn*, 716 F.3d at 1171-72.

## V.      CONCLUSION

The Court should deny Sarvis' motion for partial judgment on the pleadings on his claim for direct infringement, and grant Polyvore's cross-motion for judgment on the pleadings on all counts.

Dated:          May 11, 2015
                New York, New York

                                        Respectfully submitted,

                                        GIBSON, DUNN & CRUTCHER LLP


                                        /s/ Orin Snyder
                                        Orin Snyder

                                        Orin Snyder (admitted *pro hac vice*)
                                        200 Park Avenue, 47th Floor
                                        New York, New York 10166-0193
                                        Telephone: 212.351.4000
                                        Facsimile: 212.351.4035

                                        Joseph Tartakovsky (admitted *pro hac vice*)
                                        555 Mission Street, Suite 3000
                                        San Francisco, California 94105
                                        Telephone: 415.393.8200
                                        Facsimile: 415.374.8478

                                        Joshua D. Nadreau (BBO No. 688970)
                                        Sugarman, Rogers, Barshak & Cohen, P.C.
                                        101 Merrimac Street, 9th Floor
                                        Boston, Massachusetts 02114-4737
                                        Telephone: 617.227.3030
                                        Facsimile: 617.523.4001

                                        *Attorneys for Defendant Polyvore, Inc.*


## CERTIFICATE OF SERVICE

        I hereby certify that on May 11, 2015, a true copy of the above document was filed
through the ECF system and will be sent electronically to the registered participants as identified
on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-
registered participants.


                                        /s/ Joshua D. Nadreau
                                        Joshua D. Nadreau


20